The document below is hereby signed.

Signed: February 5, 2016



_S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| GEORGE W. CRAWFORD, | ) | Case No. 13-00759 |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| —————————————————— | ) | |
| | ) | |
| FIRST AMERICAN TITLE | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary Proceeding No. |
| v. | ) | 14-10035 |
| | ) | |
| GEORGE W. CRAWFORD, | ) | **Not for Publication in** |
| | ) | **West's Bankruptcy Reporter** |
| Defendant. | ) | |

## MEMORANDUM DECISION RE MOTION FOR SUMMARY JUDGMENT

The plaintiff, First American Title Insurance Company

("First American"), filed a complaint seeking to have a debt owed

to it by the debtor, George W. Crawford, declared

nondischargeable under 11 U.S.C. § 523(a)(6).  The debt at issue

is $34,918.75 in contempt sanctions imposed by the Superior Court

of the District of Columbia, pursuant to orders dated December

14, 2012, and November 20, 2013.  First American contends that

the Superior Court's imposition of sanctions against Crawford was

based on Crawford's willful, intentional, and bad faith conduct.
As such, First American contends that the sanctions are a
nondischargeable debt for "willful and malicious injury" under
§ 523(a)(6).  Crawford, in turn, contends that the Superior
Court's imposition of sanctions against him was unwarranted and
was the product of the presiding judge's misunderstanding of the
law.  First American has filed a motion for summary judgment.
For reasons explained in more detail below, I will grant that
motion.

I

These are the undisputed facts, as supported by the record.
On August 23, 2007, First Washington Insurance Company and Gerald
Schaeffer (collectively "First Washington") sued Crawford and
several other defendants, including First American, in the D.C.
Superior Court.

On May 31, 2012, Judge Brian F. Holeman of the Superior
Court of the District of Columbia entered an Omnibus Order in
which he detailed much of the procedural history of the Superior
Court litigation, including the parties' filing of a settlement
agreement and Crawford's alleged failure to comply with the terms
of that agreement.  As explained in the Omnibus Order, Judge
Holeman found that:

On January 14, 2010, Plaintiffs and Defendants
Thomas J. Holman, First American Title Insurance Company
and George Crawford filed a Praecipe of Partial
Settlement.  Notably, the Settlement required Defendant

2

Crawford to pay Plaintiffs ten thousand dollars ($10,000)
over the next three (3) years and provide Plaintiffs with
a sworn affidavit detailing all of his assets and
liabilities. (Praecipe 2.)  Further, Defendant Crawford
agreed to enter into a promissory note with Plaintiffs,
providing for, *inter alia*, acceleration and Plaintiffs'
attorneys' fees and costs if Plaintiffs are required to
enforce it.  (*Id.*)   The Settlement noted that upon
Defendant Crawford's execution of the affidavit and
promissory note, Plaintiffs would release Defendant
Crawford from the Judgment entered against him. (*Id.*)
Finally, Plaintiff First American and Defendant Crawford
agreed to dismiss their claims against one another with
prejudice.

On March 1, 2010, Plaintiffs filed a Motion to
Enforce Settlement or, in the Alternative, to Compel
against Defendant George Crawford, and on March 10, 2010,
Defendant First American Title Insurance Company filed a
Motion to Enforce Settlement Agreement and for Sanctions
against Defendant George Crawford.  On March 15, 2010,
Defendant Crawford filed a Motion to Vacate Judgment. And
on March 29, 2010, Plaintiffs filed an Opposition to
Defendant George Crawford's Motion to Vacate Judgment.

On May 28, 2010, the Court held a Status Hearing and
addressed these Motions.  At that Hearing, the Court
denied Defendant Crawford's Motion to Vacate Judgment as
"meritless" and "frivolous."  (Hr'g Tr. 49, 51, May 28,
2010).

Omnibus Order, at 2-3 (Exh. 1).[1]

In the Omnibus Order, Judge Holeman also went on to direct

Crawford to take certain steps to bring himself into compliance

with the terms of the settlement agreement, and awarded sanctions

under D.C. Super. Ct. R. Civ. P. 11 against Crawford and in favor

of First American in the amount of $11,730.35 and in favor of

First Washington in the amount of $18,787.00 "for [Crawford's]

failure to comply with the terms of the Partial Settlement

---

[1]  Exhibit references herein are to the exhibits First
American submitted in support of its motion for summary judgment.

Agreement and his subsequent filing of a frivolous Motion to Vacate Judgment." *Id.* at 12-13. Crawford appealed the Omnibus Order, and that appeal was dismissed by the D.C. Court of Appeals on November 13, 2014. The $11,730.35 sanction was the first of three separate court-ordered sanctions imposed against Crawford in favor of First American in the Superior Court litigation.[2]

Crawford failed, over a period of many months, to pay the sanctions awarded in favor of First Washington and First American in the Omnibus Order, and that failure led to several hearings and the filing of several motions.[3] According to a transcript of a hearing held on December 10, 2012, over which Judge Gregory E. Jackson of the Superior Court presided, Crawford claimed to be unable to pay the ordered sanctions. Judge Jackson rejected Crawford's claim that he was unable to pay, stating:

> It is clear to me, Mr. Crawford, that you have willfully and intentionally chosen not to pay the money; that you have resources available to you; you have assets available to you; you have means by which you can comply with the Court's order to pay the $18,787 due to [First

---

[2]  I note that the $11,730.35 award was belatedly paid, and is not a claim sought to be declared nondischargeable. *See* Exh. 9 at 2-3 (discussing full payment of $30,517.35 owed in sanctions, consisting of $11,730.35 owed to First American, and $18,787 owed to First Washington). Contempt sanctions awarded based on attorney's fees incurred in seeking to coerce payment of the $11,730.35 *are* part of the debt sought to be declared nondischargeable.

[3]  Exh. 5 at 6 (Mem. Op. and Order of Dec. 14, 2012), reflects that on July 17, 2012, First American filed a motion to hold Crawford in contempt for failing to comply with the Omnibus Order of May 31, 2012.

4

Washington], the $11,730.35 due to [First American], which adds up, Mr. Crawford, oh, by the way, to about the cost, actually less than what the actual cost[] is that you paid for your 2012 Ford Escape vehicle which you recently purchased . . . since being required and ordered by this Court to pay these sums.

Hr'g Tr. at 5:16-6:1, Dec. 10, 2012 (Exh. 3).  Judge Jackson further stated that Crawford's "contempt for this Court and this Court's orders have just been unbelievable.  I've never seen anything like this at all, Mr. Crawford, in all my years of practicing law here in the District of Columbia," and that Crawford had "been as contemptuous as anyone who would stand in front of this Court and yell and scream and curse."  *Id.* at 12:8-12, 21-22.  Judge Jackson further ordered the immediate incarceration of Crawford, which was followed by an amended order on December 14, 2012, requiring Crawford to pay First American an additional $23,590.50 in attorney's fees as additional sanctions.[4]  *See* Exh. 4.

Judge Jackson also issued a memorandum opinion and order on December 14, 2012, which included several findings and observations, and expanded on the rationale for his oral ruling. *See* Exh. 5.  In that opinion, Judge Jackson observed that Crawford had engaged in an "abhorrent pattern of non-compliance with" the Omnibus Order.  *Id.* at 1.  His opinion also detailed how, following motions filed by First American and First

---

[4]  This was in addition to the $11,730.35 in sanctions Crawford was previously ordered to pay to First American.

5

Washington seeking to hold Crawford in contempt for failing to pay the sanctions ordered in the Omnibus Order, the court ordered Crawford, on two separate occasions (October 3, 2012, and November 5, 2012) to provide certain financial records or else be held again in contempt of court. *Id.* at 6-8. According to the December 14, 2012 opinion, rather than comply with the October 3, 2012, and November 5, 2012 orders, Crawford filed a motion for clarification, which was denied. *Id.* at 7. Also according to the opinion, at the December 10, 2012 hearing, Crawford produced financial information, but failed to pay the sanctions awarded in the Omnibus Order, and he did not proffer that he had made any effort to come up with the money. *Id.* at 8. The opinion goes on to explain that although Crawford claimed to be financially unable to pay the ordered sanctions, the Court found instead that he had ample assets with which to pay the sanctions. *Id.* The court found that Crawford "has demonstrated a disregard for judicial decrees" and a "disregard for financial considerations" that necessitated his incarceration. *Id.* at 13. The Court further found that Crawford "has demonstrated bad faith throughout the proceedings before this Court. Instead of attempting to comply with the numerous court orders, he has sought to evade them through frivolous motions and circular argument." *Id.* at 15. The court further characterized Crawford's behavior as "a loathsome pattern of noncompliance"

6

that required he pay the attorney's fees incurred by First Washington and First American by provoking "needless litigation" in a "fruitless campaign to prove the impossible . . . ." *Id.*

According to the hearing transcript, at a December 14, 2012 hearing, Judge Jackson addressed Crawford's history of noncompliance with court orders, and on what terms the Court might release him from jail. Judge Jackson stated, "I do not trust Mr. Crawford as far as I can move this building." Hr'g Tr. at 12:4-5, Dec. 14, 2012 (Exh. 6). He further stated that Judge Holeman's sanctions in the Omnibus Order were "imposed . . . because Mr. Crawford was doing what he has continued to do all along, and that is file these frivolous motions, file these frivolous pleadings that the plaintiffs have to respond to, that the Court has to address, has to hold hearings on, instead of going forward and being done with this case. He - he alone, has caused this case to continue in the fashion that it has since I've come on this calendar, and it's been two years now." *Id.* at 14:22-15:5. Judge Jackson further stated that "[t]his has been a very conscientious and deliberate exercise on the part of Mr. Crawford. I don't understand what his motives have been. I don't see how any of this - that he profits by any of this at all. So the only thing that's left, when you sort of try to step back and look at this objectively, is that this is his effort to merely harass the plaintiffs and the other parties that are still

7

left in this case, because there's nothing.  There's no benefit.
There's nothing objective." *Id.* at 16:2-10.  Judge Jackson
further stated that Crawford "willfully and intentionally refuses
to comply" with court orders.  *Id.* at 24:4-5; 26:10-14.

Crawford was released from prison on December 21, 2012, and
paid First American the $11,730.35 in sanctions ordered under the
Omnibus Order.  The additional sanction of $23,590.50, however,
remained unpaid.  At a March 18, 2013 hearing, Crawford again
appeared before Judge Jackson in the Superior Court.  At that
time, Judge Jackson observed that Crawford's conduct in the case
had been "to the detriment . . . of the other parties in this
case," and he set a final deadline of April 15, 2013, to pay the
remaining sanctions.  Hr'g Tr., at 21:21-23, Mar. 18, 2013 (Exh.
7).

According to the hearing transcript, at an April 15, 2013
hearing, Crawford appeared before Judge Jackson and reported that
the second sanction in the amount of $23,590.50 remained unpaid.
The hearing transcript reveals that Judge Jackson again found
that Crawford had the ability to pay, and that the failure to pay
or make some effort to pay was "inexcusable." Hr'g Tr. at 23:19-
20, Apr. 15, 2013 (Exh. 8).  In discussing Crawford's failure to
pay the second sanction, the previous failure to pay the
sanctions imposed under the Omnibus Order, and Crawford's
representations to the court about the availability of assets to

8

pay the sanctions, Judge Jackson found that "Mr. Crawford has been dishonest.  He's been disingenuous.  He's been evasive. He's been conniving, quite honestly, with this Court and in this case." *Id.* at 26:22-25.  Judge Jackson then ordered that Crawford be incarcerated again, and that he remain incarcerated until the second sanction was paid.  *Id.* at 28.

On April 29, 2013, Judge Jackson issued a memorandum opinion explaining in more detail the rationale behind the second award of sanctions against Crawford and in favor of First American in the amount of $23,590.50. (Exh. 9.)

On June 3, 2013, Judge Jackson entered an order setting conditions of Crawford's release, which directed the payment of sanctions to First American in the amount of $2,500 per month, with the balance to be paid in full on or before December 1, 2013. (Exh. 10.)  Crawford failed fully to comply with that order (he paid First American $5,000 of the $23,590.50 sanction prior to filing this bankruptcy case, although the precise timing of those payments is unclear).  Crawford's non-compliance with the order setting conditions led Judge Jackson to impose a third round of sanctions against Crawford and in favor of First American in the amount of $16,328.25.  The basis for the imposition of those sanctions is explained in a November 20, 2013 Memorandum Opinion.  (Exh. 12.)

According to the November 20, 2013 Memorandum Opinion, the

9

request for fees that supported the imposition of additional
sanctions against Crawford and in favor of First American was
for:

> services stem[ming] from conduct on the part of
> [Crawford] that this Court has found to be either
> frivolous and meritless, or contemptuous. Crawford's
> evasive conduct and intransigence date back, at the
> least, to early 2010. Crawford's appeal of an Order
> crafted by the Court based on [Crawford's] counsel's
> representations of Crawford's ability to reimburse
> previously-imposed sanctions, and agreed to by Crawford,
> demonstrates his continuing bad faith in these
> proceedings. Hence, but for Crawford's evasive conduct,
> . . . First American would not have incurred the subject
> fees.

*Id.* at 4.

Crawford filed for bankruptcy on December 11, 2013, and the
Superior Court action was stayed under 11 U.S.C. § 362(a).[5]

The only thing I need add to the foregoing is the following.
An additional reason why contempt sanctions were imposed against
Crawford was his failure to provide documents he had been
required to produce under the Omnibus Order of May 31, 2012,
namely, an executed promissory note and an executed affidavit
regarding assets and liabilities, Exh. 5 (Mem. Op. and Order of
Dec. 14, 2012) at 11-12, with Judge Jackson rejecting Crawford's

---

[5] The sanctions that remain unpaid and the subject of this
nondischargeability complaint are the remaining $18,590.50 of the
$23,590.50 in sanctions imposed by order dated December 14, 2012
(Crawford having paid First American $5,000 of those sanctions
pre-petition), and the $16,328.25 in sanctions imposed under the
November 20, 2013 order, with a total remaining claim of
$34,918.75.

argument that he should be excused from producing the same because that would moot his appeal challenging the requirement to produce them. *Id.* at 12 n.13. The record makes clear that Judge Jackson's findings recited above regarding Crawford's contempt being willful and malicious apply equally to this aspect of his contempt ruling.

II

Summary judgment will be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a mater of law." Fed. R. Civ. P. 56(a), as made applicable by Fed. R. Bankr. P. 7056. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "While the Court must construe all inferences in favor of the non-moving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, the court is bound by factual determinations made in prior actions where collateral estoppel applies. *Ramsey v. Bernstein (In re Bernstein)*, 197 B.R. 475, 479 (D. Md. 1996), citing *Allen v. McCurry*, 499 U.S. 90, 94-5 (1980)." *In re McCoskey*, 2006 WL

11

5217793, at *1 (Bankr. D. Md. Feb. 21, 2006).

Here, many of the Superior Court's findings are binding on this court as a matter of collateral estoppel. As to any issues *not* resolved in favor of First American as a matter of collateral estoppel, I conclude that the evidence is such that no reasonable finder of fact could return a verdict in favor of Crawford. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). It follows that there can be no genuine dispute that the debt at issue here was one for willful and malicious injury to First American within the meaning of § 523(a)(6), and First American is entitled to a judgment declaring the debt to be nondischargeable under § 523(a)(6) as a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."

A.

THE DOCTRINE OF COLLATERAL ESTOPPEL

The preclusive effect of the Superior Court's rulings must be determined under the preclusion law of the District of Columbia as the jurisdiction in which the judgment was issued. *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 81 (1984); *In re Ansari*, 113 F.3d 17, 19 (4th Cir. 1997). Under District of Columbia law, collateral estoppel, or issue preclusion:

> renders conclusive in the same or a subsequent action
> determination of an issue of fact or law when (1) the

> issue is actually litigated; and (2) determined by a
> valid, final judgment on the merits; (3) after a full and
> fair opportunity for litigation by the parties or their
> privies; (4) under circumstances where the determination
> was essential to the judgment, and not merely dictum.

*Washington Medical Center v. Holle*, 573 A.2d 1269, 1283 (D.C.

1990). The parties agree that the debt at issue in this

proceeding arises from sanctions imposed by Superior Court Judge

Gregory E. Jackson. If the conduct for which Crawford was

sanctioned was conduct that the Superior Court found to be both

willful and malicious (as those terms are used in § 523(a)(6)

and the other requirements of collateral estoppel are met, the

debt is nondischargeable under § 523(a)(6) as a debt "for willful

and malicious injury by the debtor to another entity or to the

property of another entity."

There can be no legitimate dispute that Judge Jackson

imposed the sanctions at issue based upon conduct he found to be

willful as that term is used in § 523(a)(6) (see part B, below)

and malicious as that term is used in § 523(a)(6) (see part C,

below). There is no evidence in the record that would permit a

reasonable finder of fact to reach a different conclusion

regarding the existence of such findings of willfulness and

malice. The hearing transcripts, decisions, and orders are

replete with examples of Judge Jackson explaining the basis for

his imposition of sanctions, and those explanations uniformly

condemn Crawford's conduct as willful, intentional, and

13

contemptuous.  Those transcripts, decisions, and orders are also
clear that the sanctions were awarded to compensate the other
parties for the needless expense Crawford's contemptuous conduct
imposed upon them.  In one hearing, Judge Jackson stated that
Crawford's "contempt for this Court and this Court's orders have
just been unbelievable.  I've never seen anything like this at
all, Mr. Crawford, in all my years of practicing law here in the
District of Columbia," and went on to state that Crawford had
"been as contemptuous as anyone who would stand in front of this
Court and yell and scream and curse." Hr'g Tr. at 12:8-12, 20-22,
Dec. 10, 2012 (Exh. 3).  He also noted that contempt was being
ordered because "Crawford has demonstrated a disregard for
judicial decrees . . . . [and] has demonstrated bad faith
throughout the proceedings before this Court.  Instead of
attempting to comply with the numerous court orders, he has
sought to evade them through frivolous motions and circular
argument."  Mem. Op. of Dec. 14, 2012, at 13, 15 (Exh. 5).  The
court further characterized Crawford's behavior as "a loathsome
pattern of noncompliance" that required he pay the attorney's
fees incurred by First Washington and First American by provoking
"needless litigation" in a "fruitless campaign to prove the
impossible . . . ." *Id.* at 15.  Judge Jackson likewise concluded
that Crawford's litigation tactics were intended "merely to
harass the plaintiffs and other parties still left in the case."

14

Hr'g Tr. at 16:2-10, Dec. 14, 2012 (Exh. 6).  Finally, Judge

Jackson summed it up by saying that "Crawford has been dishonest.

He's been disingenuous, He's been evasive.  He's been conniving,

quite honestly, with this Court and in this case."  Hr'g Tr. at

26:22-25, Apr. 15, 2013 (Exh. 8).

B.

WILLFUL INJURY UNDER § 523(a)(6)

I will assume in Crawford's favor that "§ 523(a)(6)'s

willful injury requirement is met only when the debtor has a

subjective motive to inflict injury or when the debtor believes

that injury is substantially certain to result from his own

conduct,"  *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th

Cir. 2002), and that it is not enough, as held in *Shcolnik v.*

*Rapid Settlements Ltd. (In re Shcolnik)*, 670 F.3d 624 (5th Cir.

2012), and *In re Markowitz*, 190 F.3d 455 (6th Cir. 1999), to show

only an "objective certainty of harm."  Nevertheless, as held in

*In re Ormsby*, 591 F.3d 1199, 1206 (9th Cir. 2010):

> The Debtor is charged with the knowledge of the natural
> consequences of his actions.  *Cablevision Sys. Corp. v.*
> *Cohen (In re Cohen)*, 121 B.R. 267, 271 (Bankr. E.D.N.Y.
> 1990); *see Su*, 290 F.3d at 1146 ("In addition to what a
> debtor may admit to knowing, the bankruptcy court may
> consider circumstantial evidence that tends to establish
> what the debtor must have actually known when taking the
> injury-producing action.").

In that case, Ormsby contended that "section 523(a)(6)

does not apply because the state court did not adopt a finding

that Ormsby had the subjective intent to injure [the creditor] or

15

that he believed that [the creditor's] injury was substantially certain to occur as a result of his conduct." 591 F.3d at 1206-07. The court of appeals nevertheless upheld the bankruptcy court's determination that collateral estoppel applied, concluding that the state court judge's findings necessarily demonstrated that Ormsby was aware that injury was certain to follow from his acts. The same is true in this case.

Here, the contempt was a failure to comply with court orders, which were clear and unambiguous, requiring Crawford to make payments to First American, and to produce certain documents. On this record, Judge Jackson's findings necessarily included a finding that Crawford had the ability to comply with the court's orders, including an ability to make required payments and to make required production of documents. Inability to comply is a defense to contempt. *See D.D. v. M.T.*, 550 A.2d 37, 44 (D.C. 1988) ("[W]e know of only two recognized defenses in civil contempt proceedings: substantial compliance and inability to do that which the court commanded."). Indeed, Judge Jackson was required to make a finding of ability to comply. As he stated in his Memorandum Opinion and Order of December 14, 2012,[6] at 10, "[r]egardless of whether the contemnor has raised a recognized defense, the court should find that the contemnor 'ha[s] the *present* ability to pay that accrued sum.' *Langley v.*

---

[6]   Exh. 5.

16

*Kornegay*, 620 A.2d 865, 865 (D.C. 1993) (emphasis added)."
Crawford raised the defense of inability to pay, and Judge
Jackson rejected it, finding that Crawford had the ability to pay
the $11,730.35 that had been imposed by the Omnibus Order of May
31, 2012, by the deadline set by the court.

Judge Jackson also implicitly found that Crawford had the
ability to provide documents he had been required to produce
under the Omnibus Order of May 31, 2012, namely, an executed
promissory note and an executed affidavit regarding assets and
liabilities, *id.* at 11-12, with Judge Jackson rejecting
Crawford's argument that he should be excused from producing the
same because that would moot his appeal challenging the
requirement to produce them.  *Id.* at 12 n.13.

Based on collateral estoppel, I must rule, based on the
Superior Court's findings, that:

> (1) there was a failure to comply with court orders, of
> which Crawford had knowledge, when Crawford was able to
> comply with those orders; and

> (2) the failure to comply caused injury in the amount
> of the compensatory sanctions awarded.

As to each of these issues, collateral estoppel applies because
(1) the issue was actually litigated; (2) determined by a valid,
final judgment on the merits; (3) after a full and fair
opportunity for litigation by Crawford; (4) under circumstances

17

where the determination of the issue was essential to the judgment, and not merely dictum.

There remain the issues of whether (1) Crawford acted intentionally not to comply with the Superior Court's orders; and (2) knew that the injury was substantially certain to result from that failure to comply. Summary judgment is appropriate as to those issues as well.

As to the first of those two issues, the Superior Court found that Crawford knowingly continued to fail to comply with the court's orders, leading to his incarceration. On that basis, collateral estoppel arguably applies to the issue of whether Crawford intentionally failed to comply.[7] Here, a finding of deliberate failure to comply appears to have been necessary to impose the severe coercive contempt sanction of incarceration. On the other hand, the Superior Court could have awarded compensatory contempt sanctions even if Crawford's failure to act was the result of negligence (as might occur if a party fails to comply with an order or when a party honestly misunderstands an order even though it was clear and unambiguous), as good faith is

---

[7] *See, e.g., Siemer v. Nangle (In re Nangle)*, 274 F.3d 481 (8th Cir. 2001); *Neufeld v. McDowell (In re McDowell)*, 415 B.R. 612 (Bankr. S.D. Fla. 2008); *PRP Wine Int'l, Inc. v. Allison (In re Allison)*, 176 B.R. 60 (Bankr. S.D. Fla. 1994); *In re Deb,* No. 11-30951-5-MCR, 2012 WL 1664235, at *8 (Bankr. N.D.N.Y. May 11, 2012); *Buffalo Gyn Womenservices, Inc. v. Behn (In re Behn)*, 242 B.R. 229 (Bankr. W.D.N.Y. 1999). *But see In re Knight*, Adv. No. 10-03092, 2011 WL 6934480, at *3 (B.A.P. 9th Cir. Nov. 7, 2011); *In re Baiardi*, 493 B.R. 497, 504 (Bankr. E.D. Mich. 2013).

not a defense to contempt.   Accordingly, there is an argument to
be made that collateral estoppel does not apply to this issue.

Even if collateral estoppel does not apply, First American
is entitled to summary judgment on this issue.   The record
submitted in support of the motion for summary judgment
establishes, in regard to this issue of whether Crawford acted
intentionally, that there exist no "genuine factual issues that
properly can be resolved only by a finder of fact because they
may reasonably be resolved in favor of either party," *Anderson
v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511,
91 L.Ed.2d 202 (1986), as would be necessary to deny the motion
for summary judgment.   The Superior Court record leaves no doubt
that Crawford's failure to comply was deliberate, not the result
of negligence.   Crawford did not and does not contend that his
failure to comply was due to negligence.   Rather, Crawford's
defense in the Superior Court was that he could not comply, and
the Superior Court rejected that defense.   Moreover, Crawford's
conduct in the Superior Court and here makes evident that he was
refusing to comply, not negligently failing to do so, because he
disagreed with the Superior Court's orders and hoped to have them
set aside on appeal.

As to the last remaining issue of whether Crawford knew that
his failure to comply was substantially certain to injure First
American, summary judgment is also appropriate.   Crawford, a

19

lawyer and administrative law judge, necessarily knew that his failure to comply was injuring First American by delaying it in receiving that to which it was entitled, and forcing it to incur fees in attempting to coerce compliance. That issue could not be reasonably resolved in his favor by a finder of fact, and, thus, under *Anderson v. Liberty Lobby*, summary judgment is appropriate on that issue as well. As in *In re Ormsby*, the only reasonable finding that could be made based on the circumstances was that Crawford knew that his non-compliance with the Superior Court's orders was substantially certain to injure First American. Accordingly, there was a willful injury within the meaning of § 523(a)(6) under the test enunciated in *Su*:

> (1) there was a failure to comply with court orders, of which Crawford had knowledge, when Crawford was able to comply with those orders;

> (2) the failure to comply caused injury in the amount of the compensatory sanctions awarded;

> (3) Crawford intentionally failed to comply with the Superior Court's orders; and

> (4) Crawford's intentional act was one that he

knew was substantially likely to injure First American.
The remaining issue is whether this intentional injury was also a malicious injury.

C.

MALICIOUS INJURY UNDER § 523(a)(6)

The existence of malicious injury under § 523(a)(6) is established by a showing of an injury that was "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *Navistar Fin. Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 87-88 (2d Cir. 1996) (citations omitted).  Here, a finding of contempt required a finding that Crawford's failure to comply with orders was without just cause or excuse.  Accordingly, in finding that Crawford had acted maliciously, the Superior Court necessarily found that Crawford had acted wrongfully and without just cause or excuse.  Even if collateral estoppel did not apply, summary judgment would be appropriate.  Malice may be actual or implied, and "[i]mplied malice may be demonstrated 'by the acts and conduct of the debtor in the context of [the] surrounding circumstances.'"  *First Nat'l Bank of Maryland v. Stanley (In re Stanley )*, 66 F.3d 664, 668 (4th Cir. 1995).  No finder of fact could reasonably conclude based on the circumstances that Crawford's injuring First

21

American was done with just cause or excuse.[8]

D.

CRAWFORD'S OPPOSITION FAILS
TO SHOW THAT SUMMARY JUDGMENT IS NOT APPROPRIATE

Crawford does not attempt to persuade this court that Judge Jackson found his conduct to be anything other than willful and malicious. Crawford's position is, rather, that Judge Jackson's rulings were erroneous and the sanctions ought not have been imposed. He contends that Judge Jackson was acting under a misapprehension of the law when he evaluated Crawford's ability to pay the court-ordered sanctions. He likewise contends that the Superior Court was wrong when it ruled that Crawford's motions were frivolous. And finally, he argues that the Superior

---

[8] Among the relevant circumstances, beyond the fact that a finding of contempt necessarily means the failure to comply with the orders was without just cause or excuse, are the following. Crawford acted in wrongful ways to frustrate compliance with those orders. The Superior Court found that Crawford had engaged in a broad range and continued pattern of wrongful conduct in attempting to frustrate First American's entitlement to receive payment of amounts owed it. For example, Judge Jackson's exercise of his discretion in imposing the coercive contempt sanction of incarceration and in imposing compensatory monetary contempt sanctions was based, in part, on Judge Jackson's findings that Crawford had misrepresented his assets to the court, that he had misrepresented his ability to pay the sanctions from those assets, and had even transferred an asset with an assessed value of at least $60,000 to his son while representing to the court that the asset had no value. *See* Hr'g Tr. at 25-26, Apr. 15, 2013 (Exh. 8). Judge Jackson's imposition of sanctions upon Crawford was likewise based on his finding that Crawford had failed to produce financial information, as directed, Mem. Op. of Dec. 14, 2012, at 6-8 (Exh. 5), had filed frivolous motions, *id.* at 15, and had been dishonest with the court. *See* Hr'g Tr. at 26:22, Apr. 15, 2013 (Exh. 8).

22

Court's rulings were improperly based on misrepresentations made by Crawford's opponents in that litigation.  Through his objections, Crawford seeks to relitigate issues that have already been raised in and decided by the Superior Court.  Under the doctrine of issue preclusion, also known as collateral estoppel, Crawford is precluded from relitigating here "any issue that was raised and decided in a prior action." *Novak v. World Bank*, 703 F.2d 1305, 1309 (D.C. Cir. 1983).  Likewise, in accordance with the *Rooker-Feldman* doctrine, if Crawford wishes to challenge the propriety of the sanctions imposed by the Superior Court, or any of Judge Jackson's rulings in that proceeding, he needs to raise those issues either through motions for reconsideration in the Superior Court or on appeal.  *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L Ed.2d 206 (1983); *Gray v. Poole*, 275 F.3d 1113, 1119 (D.C. Cir. 2002) ("The *Rooker-Feldman* doctrine prevents lower federal courts from hearing cases that amount to the functional equivalent of an appeal from a state court.").

If Crawford, on appeal or via a motion for reconsideration, successfully causes the sanctions against him to be vacated, there will be no debt owed.  However, Crawford's belief that he would succeed in obtaining an order vacating the sanctions debt at issue is not a defense to his intentional refusal to comply

23

with orders that had not been stayed.  That refusal, as explained

previously, was willful (as it was an intentional act that he

knew would harm First American) and was malicious (because it was

done without just cause or excuse).  Accordingly, if the

imposition of the debt is not vacated, it will be

nondischargeable despite any belief held by Crawford that he

would succeed in obtaining an order vacating the sanctions at

issue.

In his opposition, Crawford also raises the argument that

the Superior Court litigants should have reduced the initial

sanctions order to judgment and pursued recovery by executing on

the judgment rather than invoking the court's contempt powers to

compel compliance.  Crawford's observation regarding the *general*

rule regarding recovering a monetary award is not without merit.

Indeed, I have previously recognized that a monetary judgment may

not *ordinarily* be enforced by the court's contempt powers, and

ought to be enforced, instead, through a writ of execution.  *See*

*In re Pilate*, 487 B.R. 345, 349 n.2 (Bankr. D.D.C. 2013); *In re*

*Lezell*, Case No. 15-00104 (Bankr. D.D.C. June 11, 2015)(available

on the court's website).[9]  The Superior Court's imposition of

sanctions against Crawford was based on Crawford's failure to

_____

[9]  I have also recognized, however, that there are
exceptions to this rule.  *See Rockstone Capital, LLC v. Walker-*
*Thomas Furniture Co., Inc. (In re Smith)*, 2007 WL 2429450, at *2
(Bankr. D.D.C. Aug. 23, 2007).

24

comply with orders enforcing the terms of a settlement, including his failure, **by deadlines set by the Superior Court**, to pay previously-imposed sanctions and to produce certain documents. The Superior Court's orders in that regard were clear and unambiguous, and Crawford refused without just cause to comply with those orders, despite the ability to comply.  This presented a classic case of civil contempt.  In any event, even if the Superior Court was in error in utilizing its contempt powers regarding Crawford's failure to pay amounts awarded against him, that is an issue that can only be addressed by the Superior Court or by the District of Columbia Court of Appeals.  *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L Ed.2d 206 (1983).

III

Based on the foregoing, First American is entitled to summary judgment in its favor and a ruling that the debt in the amount of $34,918.75 is nondischargeable under § 523(a)(6) as a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."  It is

ORDERED that First American's motion for summary judgment is GRANTED.  It is further

ORDERED that a judgment follows declaring the debt at issue in this proceeding to be nondischargeable under 11 U.S.C.

§ 523(a)(6).

[Signed and dated above.]


Copies to: All counsel of record; Office of United States Trustee.